Nicole C. Pearson (265350)
Email: nicole@fltjllp.com
LAW OFFICES OF NICOLE C. PEARSON
3421 Via Oporto, Suite 201
Newport Beach, CA 92663
Telephone: (424) 272-5526

Michael A. Yoder* (VSB: 93863)
Email: michael@yoderesq.com
LAW OFFICE OF MICHAEL A. YODER, PLLC
2300 Wilson Blvd., Suite 700
Arlington, VA 22201
Telephone: (571) 234-5594
*Pro Hac Vice forthcoming

Counsel for Plaintiff Daniel Barrozo

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

DANIEL BARROZO,

    *Plaintiff*,

    v.

CHAFFEY COMMUNITY COLLEGE DISTRICT, SUSAN HARDIE, in her individual and official capacities, and MICHAEL FINK, in his individual and official capacities,

    *Defendants*.

Civil Action No.: _____

**COMPLAINT**

    Plaintiff Daniel Barozzo files this Complaint for declaratory and injunctive relief and monetary damages against Defendants Chaffey Community College District, Susan Hardie, and Michael Fink (collectively, the "District") pursuant to Title I of the Americans with Disabilities Act as amended, 42 U.S.C. §§ 12101 *et seq*. ("ADA"), Title VII of the

Civil Rights Act of 1964 as amended, 42 U.S.C. §§ 2000e *et seq*. ("Title VII"), and the California Fair Housing and Employment Act,  Cal. Gov't Code §§ 12900 *et seq*. ("FEHA") and in further support thereof, alleges as follows:

### NATURE OF THE CASE

Plaintiff is a Christian, a father, an IT professional, and an overall private man. While these descriptors are commonly known amongst his colleagues at Chaffey College, what had not been known until December 2020, is that Plaintiff suffers from muscular dystrophy, asthma, and panic attacks. Since he began working at Chaffey College in 2016, Plaintiff had never been confronted with a scenario in which he was unable to perform the essential functions or duties of his job, with or without an accommodation. But that changed on December 11, 2020.

On that day, Plaintiff arrived to work as scheduled. Upon arrival, he encountered a Chaffey College Human Resources ("HR") employee who provided him with an attestation form pursuant to the District's newly revised COVID-19 mitigation policy. Under this policy, all Chaffey College employees were required to submit to a temperature check and sign an attestation form certifying that (1) they had not been exposed to anyone with COVID-19 and (2) that they were not experiencing any symptoms of COVID-19. Plaintiff did not take issue with this and began reading the form.

Moments after he began reading the form, he advised the HR employee that he was not comfortable signing it and requested that he speak with Susan Hardie, Chaffey's HR Director. Frantic and without any basis whatsoever, the HR employee hastily telephoned Ms. Hardie and erroneously claimed that I was being "non-compliant" and "uncooperative" because Plaintiff merely stated he was "uncomfortable" with signing the form. But that lack of comfort was not in light of *anything* that had to do with COVID-19—Plaintiff was uncomfortable signing the form because Question #1 asked if he had experienced any COVID-19 related symptoms, including *inter alia* "muscle and body aches." Specifically, Question #1 on the attestation form read as follows:

I am not experiencing any symptoms such as current or recent fever (100.4° or higher), new or worsening cough, new or worsening shortness of breath, respiratory illness, headache, **muscle and body aches**, sudden lack of taste or smell, or a sudden onset of unexplained gastrointestinal illness.

As previously mentioned, Plaintiff is a private person. While Plaintiff suffers from *inter alia* muscular dystrophy, he had never had a need to disclose this to his colleagues because at no time prior to December 11, 2020 had Plaintiff encountered scenario in which his sensitive medical condition had been relevant. He has had muscular dystrophy his entire life and Plaintiff learned to mitigate the impact of its symptoms on his body despite the fact that, nevertheless, symptoms of his condition were always present. And as one may assume, two symptoms of muscular dystrophy are indeed, muscle aches and body aches.

The entire reason Plaintiff stated he was uncomfortable is predicated upon the fact that, as a private person, he did not want strangers or miscellaneous Chaffey College employees knowing about his sensitive medical condition; hence, why he asked to speak with Ms. Hardie. But once the HR employee got Ms. Hardie on the phone, she immediately jumped to conclusions and interpreted Plaintiff's discomfort with signing the form as an indication that he was either acting callously towards Chaffey's COVID-19 mitigation efforts or alternatively, that Plaintiff COVID-19 positive. Of course, neither were true.

Through the phone's speaker function, Ms. Hardie immediately lashed out with hostility. Plaintiff simply responded to her and advised that he felt as though the attestation form "violated [his] HIPAA rights." Admittedly, Plaintiff erroneously cited HIPAA which, for an educational institution, is inapplicable; however, Plaintiff's erroneous citation does not justify the inappropriate and unprofessional manner in which Ms. Hardie admonished him. After Plaintiff attempted multiple times to explain and deescalate the situation, Ms. Hardie screamed at Plaintiff, exclaiming, "You need to leave now Daniel! Leave now!"

Exercising his discretion and realizing the situation would not de-escalate, he advised he would leave and simply asked that Mike Fink, his supervisor, and Monica Han, the president of the employee's union, be notified. In response, Ms. Hardie "You don't tell

me what to do Daniel! Leave now!", at which point Plaintiff walked to his car and left campus.

From this moment forward, Ms. Hardie became incessant upon bringing down wrath upon me, going so far as to involve not only my supervisor, but other employees around the Chaffey College Campus—and Plaintiff has been attempting to resolve this misunderstanding gone awry ever since. Unfortunately, his efforts have caused him to not only endure significant levels of hostility and utilize multitude of various extrajudicial measures in hopes that the unjustified feud between he, Ms. Hardie, Mr. Fink, and other Chaffey employees who blindly chose sides, would ultimately be resolved. Regrettably, Plaintiffs efforts were to no avail (as more fully explained below), and the lack of success in obtaining a favorable resolution absent-court intervention is the basis giving rise to this action.

## **PARTIES**

1.   Daniel Barozzo ("Plaintiff") is an adult resident of the State of California and suffers from muscular dystrophy and severe asthma (collectively, "disabilities").  At all times relevant to this action, Plaintiff was employed by the District as an Internet Technology ("IT") Technician Plaintiff's primary duties and responsibilities included problem diagnosing and resolution concerning software applications and hardware systems for District staff/faculty and students, training new users on updated technologies, performing technical assistance, maintenance, and systems support and troubleshooting system hardware, software, and network failures and conflicts.

2.   Defendant Chaffey College Community District (the "District") is a public community college located in Rancho Cucamonga, California and organized under the laws of the State of California. The District employs more than twenty-five (25) and is responsible for the supervision and operation of its academic programs and administrative departments, including its IT Department.

3.   Defendant Susan Hardie is a resident of the State of California and the District's Director of Human Resources Director. In this role, Ms. Hardie is responsible for

all managerial decisions and operations, policies, and procedures applicable to District employees. Ms. Hardie is sued in her individual and official capacities and all allegations against the District herein therefore also apply to Ms. Hardie to the extent provided by law—and vice-versa.

4.     Defendant Michael Fink is a resident of the State of California and the District's Chief Information Officer; however, at all times relevant, Mr. Fink served the District as its Information Systems Director. In this role, Mr. Fink is responsible for overseeing security of systems, networks, and District electronic and technical information and making managerial decisions of subordinate IT professionals employed by the District, including Plaintiff. Mr. Fink is sued in his individual and official capacities and all allegations against the District herein therefore also apply to Mr. Fink to the extent provided by law—and vice-versa.

## JURISDICTION & VENUE

5.     Jurisdiction is conferred upon this court pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12117, both of which provide for original jurisdiction for Plaintiff's claims arising under the laws of the United States.

6.     This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's claims brought pursuant to the Cal. Gov't Code, in that such claims are so closely related to Plaintiff's federal claims upon which this Court's original jurisdiction is based as to satisfy the same case or controversy requirement prescribed by Article III of the United States Constitution.

7.     Venue is proper pursuant to 28 U.S.C. §1391 in that the District exists in this district and all events giving rise to this action occurred in this district.

8.     Venue is also proper pursuant to 42 U.S.C. § 2000e-(5)(f)(3) because the alleged unlawful employment practices were committed within this district, the employment records relevant to the alleged unlawful employment practices are maintained and administered in this district, and the District has its principal office in this district.

## **EXHAUSTION OF ADMINISTRATIVE REMEDIES**

9.     On April 25, 2022, Plaintiff filed a formal Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination and retaliation on the basis of religion and disability.

10.    On September 13, 2022, the EEOC issued Plaintiff a Notice of Right to Sue ("right-to-sue letter") in regard to the aforesaid Charge. *See* Exhibit 1.

11.    Plaintiff has exhausted all administrative remedies and complied with all conditions precedent to maintaining this action, in that Plaintiff filed his formal Charge of Discrimination with the EEOC within 180 days of the last date of discrimination, and hereby initiates this action on December 12, 2022, which is within ninety (90) days of the date on which Plaintiff received his right-to-sue letter.

## **FACTS**

### I.    **Background**

12.    Plaintiff suffers from muscular dystrophy and severe asthma. He has maintained medical records revealing the continued nature of his medical conditions since his diagnosis through present.

13.    In 2016, Plaintiff was hired by the District as an IT Technician. Plaintiff maintained this position at all times relevant to this action.

14.    At the time the District hired Plaintiff, there was no obligation, legal or otherwise, that Plaintiff be vaccinated against COVID-19.

15.    Plaintiff's disabilities are physical impairments that substantially limit numerous major life activities, including caring for himself, performing manual tasks, eating, sleeping, breathing, learning, reading, concentrating, thinking, communicating, and working.   Plaintiff's disability is exacerbated by mechanisms that reduce oxygen flow and medical interventions that disrupt the neurological functioning of Plaintiff's body and muscles. Plaintiff's disability did not affect his employment or ability to perform the essential functions of his job from his hire until December of 2020.

16.    From the time he was hired until the events complained of herein, the District

permitted Plaintiff to work without wearing face masks or compelling him to receive vaccines that impact his neurological functioning.

## II.    The District's Mandatory COVID-19 Vaccination Policy

17.    In March of 2020, the District modified its standard operating procedures and working hours in the wake of the newly discovered "COVID-19" virus outbreak. Due to the unknown nature of the virus, the District permitted—and required—the vast majority of its staff to begin working remotely. Only a few employees worked on campus at this time; all of whom were required to be physically present.

18.    Students who regularly attended class on-campus would begin learning remotely while administrators and staff would continue to work from home. However, in order to facilitate the development of a distance learning curriculum and deploy it to the students quickly and accurately, Plaintiff was deemed a "Critical Infrastructure Employee" which among other things, required that he be physically present on-campus to perform his duties.

19.    From March of 2020 through December of 2020, Plaintiff performed the essential functions of his job at or in excess of the District's expectations and he did so without incident.

20.    However, things began to change once the District implemented a new "health check-in" requirement in mid-December, 2020. Under this new requirement, employees working on-campus like Plaintiff had to submit to temperature checks, respond to a medical questionnaire, and provide evidence that they did not have COVID-19.

21.    Due to the highly invasive nature of what was asked in questionnaire, Plaintiff became uncomfortable and did not want to provide a response. Plaintiff had always been able to perform the essential functions and duties of his job with or without an accommodation and as a result, he had not yet advised the District that he was disabled. Doing so at any time prior to December of 2020 was irrelevant and as a private person, Plaintiff did not want extraneous persons to be aware of this sensitive, personal information.

### III.   The District's Disability Discrimination Against Plaintiff

22.    Despite being a private person, Plaintiff understood that he would need to disclose that he is disabled and seek a reasonable accommodation in order to alleviate the burdens imposed by the District's weekly COVID-19 testing, masking, and temperature check policies.

23.    On or about December 14, 2020, Plaintiff advised the District in writing that he was a disabled person within the meaning intended by the ADA. Plaintiff also attached medical documentation to his accommodation request that evidenced his muscular dystrophy and severe asthma conditions.

24.    In penning his accommodation request, Plaintiff respectfully raised concerns with the District regarding the highly invasive and unlawful scope of questions posed in the mandatory questionnaire to which the District required Plaintiff provide answers.

25.    To his surprise, the District was not only averse to accommodating him, but even worse, the District began discriminating and retaliating against Plaintiff because his disabilities precluded him from complying with the health check-in requirement.

26.    Upon learning that Plaintiff suffered from pre-existing conditions and that he could not satisfy the District's obligatory health check-in requirement, Susan Hardie, the District's Human Resources ("HR") Director, called Plaintiff "a liar" and began a discriminatory and retaliatory campaign against him. Ms. Hardie even went so far as to place Plaintiff on one (1) week unpaid administrative leave. The ever-increasing nature of the vitriol-fueled discrimination campaign the District, by and through Ms. Hardie, began to gravely impact Plaintiff, even pushing him to the point that he began enduring severe panic attacks on a regular basis.

27.    After enduring weeks upon weeks of coercion and discrimination arising out of Plaintiff's refusal to provide the District with sensitive personal medical information—notably, information to which the District was *not* lawfully entitled—the District finally permitted Plaintiff to begin working from home in February of 2021. Unfortunately, the reprieve was short-lived. In August 2021, the District again revised its policy and required

Plaintiff to resume working on-campus.

28.     Prior to his return, Plaintiff contacted Ms. Hardie via email and inquired as to whether any modifications had been made to its health check-in process in light of the District's knowledge that Plaintiff had pre-existing medical conditions. In response, and despite having medical documentation in her possession, Ms. Hardie nevertheless replied to Plaintiff and informed him that he was required to have his physician complete the ADA Medical Questionnaire she had attached in her reply.

29.     Notwithstanding already having medical documentation in her possession, Plaintiff nevertheless complied and returned to Ms. Hardie a copy of the ADA Medical Questionnaire his physician had completed per her demand.

30.     Upon receipt, Ms. Hardie then informed Plaintiff that his return to work had been put on hold until she had time to complete a review process concerning the physician-completed Questionnaire. Throughout the process, Ms. Hardie continued to pry into Plaintiff's personal life and demanded that he provide her with information to which she is not entitled, including information about Plaintiff's vaccination status.

31.     Sensing the discrimination would not subside, Plaintiff also submitted a religious accommodation—something he had not initially done because he did not feel as though he needed to submit *two* accommodation requests regarding the same policy. However, Plaintiff decided to submit a religious accommodation request in hopes that the additional religious-based request would vitiate any opportunity for the District to further deprive him of an accommodation to the District's health check-in policy Plaintiff was lawfully entitled.

32.     But this backfired. Not only did the additional request incense Ms. Hardie and exacerbate the severity with which she harassed Plaintiff, but as discussed below, the intimate knowledge of Plaintiff's sincerely held religious beliefs was weaponized in a fashion identical to that which the District weaponized the knowledge of Plaintiff's medical condition.

33.     Unfortunately, Plaintiff's daughter fell ill the following month and he was

required to begin caring for her. As a result, Plaintiff took a leave of absence in September 2021 which was permissible under the Family Medical Leave Act ("FMLA").

34.    Towards the end of September, Plaintiff's his daughter's condition improved, and he advised the District he would be able to return to work beginning in October and he would care for his daughter from home during the evening.

35.    In utter disregard of not just Plaintiff, but also and his daughter, the District informed Plaintiff that the District had adopted and implemented a mandatory COVID-19 vaccination policy while he was caring for his daughter which *inter alia* required that become "fully vaccinated" against COVID-19 in order to maintain his employment. The District also advised that, when he returned to work in October, he would be scheduled for night shift—a shift he had *never* been assigned in six (6) years he has served as a District employee.

36.    The decision to place Plaintiff on night shift was, upon information and belief, one of many decisions made by Ms. Hardie. Upon learning Plaintiff had sincerely held religious beliefs that prevented him from being vaccinated, which was optional at this time, Ms. Hardie became further enraged and upon information and belief, took the lead in devising a scheme to constructively oust Plaintiff from his employment.

### III.    Scheme to Constructively Oust or Alternatively, Terminate "for Cause"

37.    The District figured they had a "win-win" plan developed to oust Plaintiff from his employment. Aware that the District could not fire him as there was no basis to do so, the District devised a plan calculated to *force* Plaintiff out of his employment, either through resignation or what the District presumed would be, termination for cause.

38.    The first step in the District's plan involved scheduling Plaintiff to work night shifts when he returned to work as the District knew that doing so would force Plaintiff to choose between maintaining his employment and taking care of his sick child.

39.    In the event Plaintiff managed to secure care for his daughter while he went to work, the District would then deploy the second step: the enforcement of its mandatory vaccination policy as a means to either force Plaintiff to resign or in the event if he did not

resign, the District would then rely upon his failure to comply with its policy as the basis for which it would terminate Plaintiff, for cause.

40.     The District knew that Plaintiff could not comply with its mandatory vaccination policy because of the assertions included in the religious accommodation request Plaintiff previously submitted after the District weaponized Plaintiff's medical conditions as the impetuous to discriminate against him because he declined to provide information the District requested, but was not entitled to.

41.     Unfortunately, as mentioned above, the submission of his religious accommodation request fared no better and ultimately backfired.  Rather than give rise to an accommodation to which Plaintiff was entitled, the submission of his religious-based accommodation request was weaponized against him in this diabolical scheme to rid him from the District's employ.

42.     Even if Plaintiff adhered to his sincere religious beliefs and did not resign, the District believed it would be able to terminate him, for cause under the manufactured false pretext of "failing to comply" with the District's vaccination policy.

**IV.   Continued Discrimination, Harassment, Hostility, and Failure to Accommodate**

43.     It became readily apparent that the District was intent on ridding him from its workforce because he did not submit to the requests and demands the District lodged, despite never having any legal basis for such demands. In short, the District wanted to rid any employee who did not subscribe to the narrative it wanted to project—which, in this case, was that all District employees were vaccinated and the District was in compliance with the CDC Guidance without exception—even if that "exception" is one compelled by state and federal law.

44.     Having nothing to lose and knowing that he was rightfully entitled to religious and medical accommodations not only in regard to the District's health check-in policy, but also its mandatory vaccination policy, Plaintiff again submitted medical and religious accommodation requests in regard to the same.

45.     As anticipated, the discrimination and retaliation did not stop. In January

2022, the District threatened Plaintiff unpaid leave if he failed to report for his scheduled shift—a shift the District knew Plaintiff could not work due to his minor daughter's severe medical condition and related physician's orders. After taking agonizing steps to secure supervision for his child, Plaintiff nevertheless reported for duty—and upon arrival, the District informed him that his medical accommodation request regarding the mandatory vaccination policy was denied.

46.     Due to the harassment and hostility concerning the night shift scheduling and the District's second refusal to accommodate Plaintiff despite his lawful entitled to a medical (and religious) accommodation, Plaintiff filed a Title V complaint. Because of this, the District then retaliated and placed Plaintiff on administrative leave for the entire month of February 2022.

47.     Upon his return to work in March of 2022, Plaintiff discovered that the District had stripped him of all of his duties. His IT Administrator account had been disabled, his colleagues believed he had been fired, and just prior to his return, Plaintiff learned that his colleagues had even been instructed to not speak to Plaintiff.

48.     Since March of 2022, Plaintiff has remained in a constant state of anxiety. He has yet to receive the majority of his duty assignments back, and constantly had to work in a state of fear, juggling a light, barely existent workload with evading baseless attacks, including those Plaintiff feared would be lodged against him for *not* working despite having virtually all of his duties taken from him.

49.     While hanging in the balance of the aforesaid state of perpetual fear from March 2022 through June 2022, multiple notable instances of harassment and retaliation have occurred.

50.     On or about May 26, 2022 – while speaking a Chaffey's governing Board meeting, Plaintiff was harassed, sworn and threatened by a District executive. Despite Plaintiff's request for campus police to issue a report, the District's Governing Board and entire Executive Team condoned the actions and refused to take any remedial action whatsoever.

51.     Perhaps most notable of all is the June 9, 2022 incident. On that day, Plaintiff was traveling in a campus golf cart to another part of campus where he had work to perform. In order to get to the destination, Plaintiff had to travel past the IT office. As he neared the IT office, he decided to stop and drop off a phone that he had retrieved as part of a work project Plaintiff and another colleague (located inside the IT office at the time) had been working on. Plaintiff parked the golf cart, grabbed the phone and a few personal items from the cart to drop-off in his office, and walked towards the door that was propped open.

52.     As Plaintiff approached the IT office, Plaintiff's supervisor, Mike Fink, shouted at Plaintiff because he did not have a mask on. Plaintiff advised that he was merely dropping a few items off at which time Mr. Fink scolded Plaintiff and demanded that he put a mask on, which at the time, was impossible for Plaintiff to do as his hands were full.

53.     Mr. Fink berated Plaintiff and humiliated Plaintiff in front of his colleagues. He demeaned him, ridiculed him, and harassed him until Plaintiff could not take the inappropriate and degrading treatment to which Mr. Fink subjected him. In an attempt to both, seek temporary relief from the fierce misconduct and to comply with Mr. Fink's directive, Plaintiff began walking towards the door so he could return to the golf cart and get his mask.

54.     As soon as Plaintiff began walking towards the door, Mr. Fink immediately shifted gears and accused Plaintiff of ignoring him and disregarding his order. Before Plaintiff could even respond, Mr. Fink verbally placed Plaintiff on administrative leave, just as Ms. Hardie had in December of 2020—the first instance in which the District began retaliating against Plaintiff.

55.     To make matters even worse and further humiliate, intimidate, harass, and embarrass Plaintiff, Mr. Fink telephoned Chaffey's campus police and demanded that Plaintiff be escorted off the campus—because Plaintiff attempted to comply with his orders and retrieve a mask from his golf cart.

56.     Since June 9, 2022, Plaintiff has remained on administrative leave. But this is

not the only constant that began on June 9, 2022 that still holds true to this day.

57.   After Plaintiff was escorted off campus by police, Mr. Fink enlisted third-party armed security to guard him 24/7 based upon the egregious and false accusation that Plaintiff is an "active shooter."

58.   This is patently, unequivocally, and utterly false in every regard possible.

59.   Plaintiff, to this day, has not been permitted to return to work at Chaffey College since June 9, 2022. His colleagues believe he was fired for cause, and some even believe he is a violent man, which he uncontrovertibly, is not.

60.   Boiled down to its essence, Plaintiff has been ridiculed, placed on administrative leave pending termination, humiliated, escorted off campus by police, and labeled an "active shooter" for no reason other than the fact that he is a disabled person and as a result of being disabled, Plaintiff cannot comply with the demands and preferences of Ms. Hardie and Mr. Fink.

61.   Plaintiff, at all times relevant, availed himself of the lawful protections afforded to him by the ADA, Title VII and FEHA; yet in doing so, his life has been upended and he has endured conduct that unquestionably exceeds all bounds of decency.

62.   Being disabled should be, and is, protected under state and federal law, and the forthcoming claimed are lodged to protect Plaintiff's interests as not only a disabled person, but also, an employee, a citizen of the State of California, and as an American citizen.

### COUNT I – Disability Discrimination
#### VIOLATION OF THE ADA

63.   Plaintiff incorporates by reference all preceding and subsequent paragraphs hereto as if fully set forth herein.

64.   Plaintiff is a disabled person within the meaning of 42 U.S.C. § 12102(1). Plaintiff suffers from muscular dystrophy and asthma, which are physical impairments that substantially limit one or more of Plaintiff's major life activities, such as caring for himself, performing manual tasks, eating, sleeping, breathing, learning, reading, concentrating,

thinking, communicating, and working.  The District also regards Plaintiff as having such an impairment as defined by 42 U.S.C. §§ 12102(1)(C), 3(A) and the District knew of Plaintiff's disabilities at all times relevant.

65.    Plaintiff is a qualified individual within the meaning of 42 U.S.C. § 12111(8), in that Plaintiff can perform the essential functions of his IT Technician position with or without a reasonable accommodation, as evidenced by factors including without limitation, the stellar employment record Plaintiff maintained with the District since he was hired in 2016 as well as his education, experience, performance reviews, and most recent, his successful implementation and deployment of a complex system the District used in transitioning from in-person learning to distance learning with ease.

66.    At all times relevant, Plaintiff was an employee within the meaning of 42 U.S.C. § 12111(4) and the District was Plaintiff's employer within the meaning of 42 U.S.C. § 12111(5).  The District engaged in an industry affecting commerce and has more than 25 employees for each working day in each of 20 or more calendar weeks in the current and preceding years.

67.    At all times relevant, Susan Hardie and Mike Fink, were District employees and agents of the District within the meaning of 42 U.S.C. § 12111(5). Ms. Hardie and Mr. Fink committed all acts complained of herein within the scope of their employment.

68.    The District had actual knowledge or constructive knowledge of Plaintiff's disability at all times relevant to this action, in that the District discussed Plaintiff's disability; discussed Plaintiff's need for an accommodation; examined, reviewed, or possessed medical evidence of Plaintiff's disability; and received Plaintiff's numerous requests for a disability accommodation.

69.    Ms. Hardie purposefully, willfully, intentionally, or recklessly subjected Plaintiff to a hostile work environment by engaging in a series of actions, including:

    a.  Harassing and ridiculing Plaintiff because of his disability;

    b.  Threatening Plaintiff;

    c.  Placing Plaintiff on administrative leave;

d. Ignoring Plaintiff

e. Refusing to afford Plaintiff an opportunity to be heard;

f. Refusing to permit Plaintiff to work remotely despite allowing other District IT Technicians to work remotely;

g. Demanding that Plaintiff provide her with sensitive, personal and/or medical information to which she is not entitled;

h. Refusing to accommodate Plaintiff's disability;

i. Inciting and encouraging other District employees to engage in, or otherwise take discriminatory and retaliatory action against Plaintiff;

j. Weaponizing information about Plaintiff's sincerely held religious beliefs in an attempt to constructively oust him or alternatively, in an attempt to manufacture false pretext to terminate Plaintiff's employment; and

k. Weaponizing  information about Plaintiff's medical conditions in an attempt to (1) prevent him from caring for his minor child,  (1) constructively oust him from employment; or (3) manufacture false pretext to terminate Plaintiff's employment;

l. Lying to campus police to have Plaintiff removed from campus;

m. Lying and defaming Plaintiff by labeling him as an active shooter;

70.    The District, by and through its officers, directors, agents, and/or employees committed the aforesaid acts or omissions with the intent to humiliate, ridicule, and insult Plaintiff.

71.    The aforesaid adverse employment actions occurred because Plaintiff requested an accommodation and/or engaged in protected activity by requesting an accommodation for his disability

72.     The aforesaid adverse employment actions occurred because Plaintiff engaged in protected activity by protesting Ms. Hardie's unlawful discriminatory, retaliatory, and harassing conduct.

73.    All allegations set forth herein violate the ADA.

74.     As a direct and proximate result of the District's actions or omissions, Plaintiff sustained economic injuries in amount in excess of $75,000.00, including the denial of promotional opportunity, humiliation, embarrassment, unnecessary pain and suffering, and has incurred medical expenses, attorneys' fees, and costs associated with this action.

### COUNT II – Disparate Treatment
#### VIOLATION OF FEHA

75.     Plaintiff incorporates by reference all preceding and subsequent paragraphs hereto as if fully set forth herein.

76.     Plaintiff is a disabled person, a member of a protected class, and a qualified individual as intended by the California Fair Housing and Employment Act ("FEHA").

77.     Plaintiff is an employee and the District is Plaintiff's employer as intended by FEHA.

78.     The District had actual or constructive knowledge of Plaintiff's disability at all times relevant to this action.

79.     Plaintiff experienced adverse employment action and a materially adverse change in the terms and conditions of his employment based on the aforesaid allegations.

80.     The District committed such actions with the intent to humiliate, ridicule, and occurred because Plaintiff requested an accommodation and engaged in protected activity.

81.     All allegations set forth herein violate FEHA.

82.     As a direct and proximate result of the District's actions or omissions, Plaintiff sustained economic injuries in amount in excess of $75,000.00, including the denial of promotional opportunity, humiliation, embarrassment, unnecessary pain and suffering, and has incurred medical expenses, attorneys' fees, and costs associated with this action.

### COUNT III – Disparate Treatment
#### VIOLATION OF TITLE VII

83.     Plaintiff incorporates by reference all preceding and subsequent paragraphs hereto as if fully set forth herein.

84.   Plaintiff is a disabled person, a member of a protected class, and qualified individual as intended by Title VII.

85.   Plaintiff is an employee and the District is Plaintiff's employer as intended by Title VII.

86.   The District had actual or constructive knowledge of Plaintiff's disability at all times relevant to this action.

87.   Plaintiff experienced adverse employment action and a materially adverse change in the terms and conditions of his employment based on the conduct aforesaid complained of herein.

88.   The District committed such actions with the intent to humiliate, ridicule, and occurred because Plaintiff requested an accommodation and engaged in protected activity.

89.   All allegations set forth herein violate Title VII.

90.   As a direct and proximate result of the District's actions or omissions, Plaintiff sustained economic injuries in amount in excess of $75,000.00, including the denial of promotional opportunity, humiliation, embarrassment, unnecessary pain and suffering, and has incurred medical expenses, attorneys' fees, and costs associated with this action.

## COUNT IV – Failure to Accommodate
### VIOLATION OF THE ADA

91.   Plaintiff incorporates all preceding and subsequent paragraphs hereto as if fully set forth herein.

92.   Plaintiff is a disabled person as intended by the ADA.

93.   Plaintiff is qualified to perform the essential functions of his job if provided a reasonable accommodation by his employer.

94.   Plaintiff is an employee and the District is Plaintiff's employer as intended by the ADA.

95.   The District had notice of Plaintiff's disability through actual or constructive knowledge, in that the District discussed Plaintiff's disability; discussed Plaintiff's need for reasonable accommodation; examined, reviewed, or possessed medical evidence of

Plaintiff's disability, and received Plaintiff's numerous requests asking for such reasonable accommodation.

96. The District knowingly, intentionally, recklessly, negligently, or by gross negligence, discriminated against Plaintiff because of his disability by failing or refusing to provide Plaintiff a reasonable accommodation.

97. Providing Plaintiff such accommodation would not cause the District to incur undue hardship, either financially or otherwise.

98. All allegations set forth herein violate the ADA.

99. As a direct and proximate result of the District's actions or omissions, Plaintiff sustained economic injuries in amount in excess of $75,000.00, including the denial of promotional opportunity, humiliation, embarrassment, unnecessary pain and suffering, and has incurred medical expenses, attorneys' fees, and costs associated with this action.

## COUNT V – Failure to Accommodate
### VIOLATION OF FEHA

100. Plaintiff incorporates all preceding and subsequent paragraphs hereto as if fully set forth herein.

101. Plaintiff is a disabled person as intended by FEHA.

102. Plaintiff is qualified to perform the essential functions of his job if provided a reasonable accommodation by his employer.

103. Plaintiff is an employee and the District is Plaintiff's employer as intended by the FEHA.

104. The District had notice of Plaintiff's disability through actual or constructive knowledge.

105. The District knowingly, intentionally, recklessly, negligently, or by gross negligence, discriminated against Plaintiff because of his disability by failing or refusing to provide Plaintiff a reasonable accommodation.

106. Providing Plaintiff such accommodation would not cause the District to incur undue hardship, either financially or otherwise.

107.   All allegations set forth herein violate FEHA.

108.   As a direct and proximate result of the Districts' actions or omissions, Plaintiff sustained economic injuries in amount in excess of $75,000.00, including the denial of promotional opportunity, humiliation, embarrassment, unnecessary pain and suffering, and has incurred medical expenses, attorneys' fees, and costs associated with this action.

### COUNT VI – Failure to Accommodate
#### VIOLATION OF TITLE VII

109.   Plaintiff incorporates all preceding and subsequent paragraphs hereto as if fully set forth herein.

110.   Plaintiff is a disabled person as intended by Title VII.

111.   Plaintiff is qualified to perform the essential functions of his job if provided a reasonable accommodation by his employer.

112.   Plaintiff is an employee and the District is Plaintiff's employer as intended by Title VII.

113.   The District had notice of Plaintiff's disability through actual or constructive knowledge.

114.   The District knowingly, intentionally, recklessly, negligently, or by gross negligence, discriminated against Plaintiff because of his disability by failing or refusing to provide Plaintiff a reasonable accommodation.

115.   Providing Plaintiff such accommodation would not cause the District to incur undue hardship, either financially or otherwise.

116.   All allegations set forth herein violate Title VII.

117.   As a direct and proximate result of the District's actions or omissions, Plaintiff sustained economic injuries in amount in excess of $75,000.00, including the denial of promotional opportunity, humiliation, embarrassment, unnecessary pain and suffering, and has incurred medical expenses, attorneys' fees, and costs associated with this action.

//

//

## COUNT VII – Hostile Work Environment
### VIOLATION OF THE ADA

118.   Plaintiff incorporates all preceding and subsequent paragraphs hereto as if fully set forth herein.

119.   Plaintiff is a disabled person as intended by the ADA.

120.   Plaintiff is qualified to perform the essential functions of his job if provided a reasonable accommodation by his employer.

121.   Plaintiff is an employee and the District is Plaintiff's employer as intended by the ADA.

122.   The District had notice of Plaintiff's disability through actual or constructive knowledge, in that the District discussed Plaintiff's disability; discussed Plaintiff's need for reasonable accommodation; examined, reviewed, or possessed medical evidence of Plaintiff's disability, and received Plaintiff's numerous requests asking for such a reasonable accommodation.

123.   The District, with the intent to intimidate, ridicule, and insult Plaintiff, created a hostile and abusive work environment by committing the acts or omissions complained of herein.

124.   The aforesaid adverse employment actions occurred because Plaintiff requested an accommodation and engaged in protected activity.

125.   All allegations set forth herein violate the ADA.

126.   As a direct and proximate result of the District's actions or omissions, Plaintiff sustained economic injuries in amount in excess of $75,000.00, including the denial of promotional opportunity, humiliation, embarrassment, unnecessary pain and suffering, and has incurred medical expenses, attorneys' fees, and costs associated with this action.

## COUNT VIII – Hostile Work Environment
### VIOLATION OF FEHA

127.   Plaintiff incorporates all preceding and subsequent paragraphs hereto as if fully set forth herein.

128.   Plaintiff is a disabled person as intended by FEHA.

129.   Plaintiff is qualified to perform the essential functions of his job if provided a reasonable accommodation by his employer.

130.   Plaintiff is an employee and the District is Plaintiff's employer as intended by FEHA.

131.   The District had notice of Plaintiff's disability through actual or constructive knowledge, in that Defendants discussed Plaintiff's disability; discussed Plaintiff's need for reasonable accommodation; examined, reviewed, or possessed medical evidence of Plaintiff's disability, and received Plaintiff's numerous requests asking for such accommodation.

132.   The District, with the intent to intimidate, ridicule, and insult Plaintiff, created a hostile and abusive work environment by committing the acts or omissions complained of herein.

133.   The aforesaid adverse employment actions occurred because Plaintiff requested an accommodation and engaged in protected activity.

134.   All allegations set forth herein violate FEHA.

135.   As a direct and proximate result of the District's actions or omissions, Plaintiff sustained economic injuries in amount in excess of $75,000.00, including the denial of promotional opportunity, humiliation, embarrassment, unnecessary pain and suffering, and has incurred medical expenses, attorneys' fees, and costs associated with this action.

## COUNT IX – Hostile Work Environment
### VIOLATION OF TITLE VII

136.   Plaintiff incorporates all preceding and subsequent paragraphs hereto as if fully set forth herein.

137.   Plaintiff is a disabled person as intended by Title VII.

138.   Plaintiff is qualified to perform the essential functions of his job if provided a reasonable accommodation by his employer.

139.   Plaintiff is an employee and the District is Plaintiff's employer as intended by Title VII.

140.   The District had notice of Plaintiff's disability through actual or constructive knowledge, in that the District discussed Plaintiff's disability; discussed Plaintiff's need for reasonable accommodation; examined, reviewed, or possessed medical evidence of Plaintiff's disability, and received Plaintiff's numerous requests asking for such accommodation.

141.   The District, with the intent to intimidate, ridicule, and insult Plaintiff, created a hostile and abusive work environment by committing the acts or omissions complained of herein.

142.   The aforesaid adverse employment actions occurred because Plaintiff requested an accommodation and engaged in protected activity.

143.   All allegations set forth herein violate the Title VII.

144.   As a direct and proximate result of the District's actions or omissions, Plaintiff sustained economic injuries in amount in excess of $75,000.00, including the denial of promotional opportunity, humiliation, embarrassment, unnecessary pain and suffering, and has incurred medical expenses, attorneys' fees, and costs associated with this action.

## COUNT X – Retaliation
### VIOLATION OF THE ADA

145.   Plaintiff incorporates by reference all preceding and subsequent paragraphs hereto as if fully set forth herein.

146.   Plaintiff is a disabled person as intended by the ADA.

147.   Plaintiff is qualified to perform the essential functions of his job if provided a reasonable accommodation by his employer.

148.   Plaintiff is an employee and the District is Plaintiff's employer as intended by the ADA.

149.   The District had notice of Plaintiff's disability through actual or constructive knowledge, in that the District discussed Plaintiff's disability; discussed Plaintiff's need

for reasonable accommodation; examined, reviewed, or possessed medical evidence of Plaintiff's disability, and received Plaintiff's numerous requests asking for such accommodation.

150.   Plaintiff engaged in protected activity by requesting an accommodation for his disability, and by protesting Ms. Hardie's unlawful discriminatory and harassing conduct.

151.   Ms. Hardie purposefully, willfully, intentionally, or recklessly retaliated against Plaintiff by engaging in a series of adverse actions, including:

    a.   Harassing and ridiculing Plaintiff because of his disability;

    b.   Threatening Plaintiff;

    c.   Placing Plaintiff on administrative leave;

    d.   Ignoring Plaintiff

    e.   Refusing to afford Plaintiff an opportunity to be heard;

    f.   Refusing to permit Plaintiff to work remotely despite allowing other District IT Technicians to work remotely;

    g.   Demanding that Plaintiff provide her with sensitive, personal and/or medical information to which she is not entitled;

    h.   Refusing to accommodate Plaintiff's disability;

    i.   Inciting and encouraging other District employees to engage in, or otherwise take discriminatory and retaliatory action against Plaintiff;

    j.   Weaponizing information about Plaintiff's sincerely held religious beliefs in an attempt to constructively oust him or alternatively, in an attempt to manufacture false pretext to terminate Plaintiff's employment; and

    k.   Weaponizing  information about Plaintiff's medical conditions in an attempt to (1) prevent him from caring for his minor child,  (1) constructively oust him from employment; or (3) manufacture false pretext to terminate Plaintiff's employment;

152.   Mr. Fink purposefully, willfully, intentionally, or recklessly retaliated against Plaintiff by engaging in a series of adverse actions, including:

    a.   Harassing and ridiculing Plaintiff because of his disability;

    b.   Threatening Plaintiff;

    c.   Placing Plaintiff on administrative leave;

    d.   Ignoring Plaintiff

    e.   Refusing to afford Plaintiff an opportunity to be heard;

    f.   Refusing to permit Plaintiff to work remotely despite allowing other District IT Technicians to work remotely;

    g.   Demanding that Plaintiff provide her with sensitive, personal and/or medical information to which she is not entitled;

    h.   Refusing to accommodate Plaintiff's disability;

    i.   Inciting and encouraging other District employees to engage in, or otherwise take discriminatory and retaliatory action against Plaintiff;

    j.   Weaponizing information about Plaintiff's sincerely held religious beliefs in an attempt to constructively oust him or alternatively, in an attempt to manufacture false pretext to terminate Plaintiff's employment; and

    k.   Weaponizing  information about Plaintiff's medical conditions in an attempt to (1) prevent him from caring for his minor child,  (1) constructively oust him from employment; or (3) manufacture false pretext to terminate Plaintiff's employment;

    l.   Lying to campus police to have Plaintiff removed from campus;

    m.  Lying and defaming Plaintiff by labeling him as an active shooter;

153.   The District's aforesaid acts or omissions, committed by and through its agents, Susan Hardie and Mike Fink, were committed with the intent to humiliate, ridicule, and insult Plaintiff.

154.   The District's retaliation against Plaintiff as a result of his opposition to the aforesaid disability discrimination and engagement in protected activity violates ADA.

155.   As a direct and proximate result of the District's retaliation, Plaintiff sustained economic injuries in amount in excess of $75,000.00, including the denial of promotional opportunity, humiliation, embarrassment, unnecessary pain and suffering, and has incurred medical expenses, attorneys' fees, and costs associated with this action.

## COUNT XI – Retaliation
### VIOLATION OF FEHA

156.   Plaintiff incorporates by reference all preceding and subsequent paragraphs hereto as if fully set forth herein.

157.   The District engaged in systemic retaliation against Plaintiff because he protested, opposed, and/or spoke out against the District's disability discrimination.

158.   The District's aforesaid retaliatory action was intentional, deliberate, willful, and conducted in callous disregard of Plaintiff's rights.

159.   In retaliation for engaging in protected activity, the District subjected Plaintiff to adverse employment action as complained of herein.

160.   The District's retaliation against Plaintiff as a result of his opposition to the aforesaid disability discrimination and engagement in protected activity violates FEHA.

161.   As a direct and proximate result of the District's retaliation, Plaintiff sustained economic injuries in amount in excess of $75,000.00, including the denial of promotional opportunity, humiliation, embarrassment, unnecessary pain and suffering, and has incurred medical expenses, attorneys' fees, and costs associated with this action.

## COUNT XII – Retaliation
### VIOLATION OF TITLE VII

162.   Plaintiff incorporates by reference all preceding and subsequent paragraphs hereto as if fully set forth herein.

163.   The District engaged in systemic retaliation against Plaintiff because he protested, opposed, and/or spoke out against the District's disability discrimination.

164.   The District's aforesaid retaliatory action was intentional, deliberate, willful, and conducted in callous disregard of Plaintiff's rights.

165.    In retaliation for engaging in protected activity, the District subjected Plaintiff to adverse employment action as complained of herein.

166.    The District's retaliation against Plaintiff as a result of his opposition to the aforesaid disability discrimination and engagement in protected activity violates Title VII.

167.    As a direct and proximate result of the District's retaliation, Plaintiff sustained economic injuries in amount in excess of $75,000.00, including the denial of promotional opportunity, humiliation, embarrassment, unnecessary pain and suffering, and has incurred medical expenses, attorneys' fees, and costs associated with this action.

## COUNT XIII – Intentional Infliction of Emotional Distress
### *Against Susan Hardie in her individual Capacity*

168.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

a.  Harassing and ridiculing Plaintiff because of his disability;

b.  Threatening Plaintiff;

c.  Placing Plaintiff on administrative leave;

d.  Ignoring Plaintiff

e.  Refusing to afford Plaintiff an opportunity to be heard;

f.  Refusing to permit Plaintiff to work remotely despite allowing other District IT Technicians to work remotely;

g.  Demanding that Plaintiff provide her with sensitive, personal and/or medical information to which she is not entitled;

h.  Refusing to accommodate Plaintiff's disability;

i.  Inciting and encouraging other District employees to engage in, or otherwise take discriminatory and retaliatory action against Plaintiff;

j.  Weaponizing information about Plaintiff's sincerely held religious beliefs in an attempt to constructively oust him or alternatively, in an attempt to manufacture false pretext to terminate Plaintiff's employment; and

k. Weaponizing information about Plaintiff's medical conditions in an attempt to (1) prevent him from caring for his minor child, (1) constructively oust him from employment; or (3) manufacture false pretext to terminate Plaintiff's employment;

169. Ms. Hardie engaged in the aforesaid conduct intentionally and recklessly, and Ms. Hardie knew or should have known that emotional distress would likely result.

170. The conduct in which Ms. Hardie engaged as described in the incorporated paragraphs was and is outrageous; that is, it goes beyond all bounds of decency and is and ought to be regarded as odious and utterly intolerable in a civilized community.

171. The conduct in which Ms. Hardie engaged as described above directly and proximately caused Plaintiff's injuries in that it directly, and in a natural and continuous sequence, produced or contributed to such injuries.

172. As a direct and proximate result of Ms. Hardie's aforesaid intentional or reckless conduct, Plaintiff has suffered extreme emotional distress resulting in physical symptoms including without limitation, loss of sleep, upset stomach and related abdominal pain, and loss of appetite, sustained economic injuries in amount of $500,000.00, including the denial of promotional opportunity, humiliation, embarrassment, unnecessary pain and suffering, and has incurred medical expenses, attorneys' fees, and costs associated with this action.

### COUNT XIII – Intentional Infliction of Emotional Distress
#### *Against Michael Fink in his individual Capacity*

173. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

174. Mr. Fink engaged in extreme and outrageous conduct by:

a. Harassing and ridiculing Plaintiff because of his disability;

b. Threatening Plaintiff;

c. Placing Plaintiff on administrative leave;

d. Ignoring Plaintiff

e.  Refusing to afford Plaintiff an opportunity to be heard;

f.  Refusing to permit Plaintiff to work remotely despite allowing other District IT Technicians to work remotely;

g.  Demanding that Plaintiff provide her with sensitive, personal and/or medical information to which she is not entitled;

h.  Refusing to accommodate Plaintiff's disability;

i.  Inciting and encouraging other District employees to engage in, or otherwise take discriminatory and retaliatory action against Plaintiff;

j.  Weaponizing information about Plaintiff's sincerely held religious beliefs in an attempt to constructively oust him or alternatively, in an attempt to manufacture false pretext to terminate Plaintiff's employment; and

k.  Weaponizing  information about Plaintiff's medical conditions in an attempt to (1) prevent him from caring for his minor child,  (1) constructively oust him from employment; or (3) manufacture false pretext to terminate Plaintiff's employment;

l.  Lying to campus police to have Plaintiff removed from campus;

m. Lying and defaming Plaintiff by labeling him as an active shooter;

175.  Mr. Fink engaged in the aforesaid conduct intentionally and recklessly, and Mr. Fink knew or should have known that emotional distress would likely result.

176.  The conduct in which Mr. Fink engaged as described in the incorporated paragraphs was and is outrageous; that is, it goes beyond all bounds of decency and is and ought to be regarded as odious and utterly intolerable in a civilized community.

177.  The conduct in which Mr. Fink engaged as described above directly and proximately caused Plaintiff's injuries in that it directly, and in a natural and continuous sequence, produced or contributed to such injuries.

178.  As a direct and proximate result of Mr. Fink's aforesaid intentional or reckless conduct, Plaintiff has suffered extreme emotional distress resulting in physical symptoms including without limitation, loss of sleep, upset stomach and related abdominal pain, and

loss of appetite, sustained economic injuries in amount of $500,000.00, including the denial of promotional opportunity, humiliation, embarrassment, unnecessary pain and suffering, and has incurred medical expenses, attorneys' fees, and costs associated with this action.

## DAMAGES

179.   Based on all foregoing paragraphs, and as a direct and proximate result of Defendants' conduct, Plaintiff has suffered the following injuries and incurred the following damages:

180.   Plaintiff was denied a promotion for which Defendants recommended and encouraged Plaintiff prior to May 14, 2018, ultimately resulting in the loss of pay and benefits;

181.   Plaintiff was forced to hire a private psychologist to obtain medical documentation for his well-known and medically documented PTSD, thereby incurring medically-related costs and expenses;

182.   Plaintiff suffered mental anguish, extreme emotional distress in the forms of depression, stress, anxiety attacks, loss of sleep, low self-esteem, weight gain, lack of ability to socialize with others, lack of enjoyment in previously-enjoyed recreational activities, upset stomach and related abdominal pain, indigestion, loss of appetite, bowel pain and related troubles, anger, frustration, feelings of loneliness, dissociation, hopelessness, nightmares and daytime terrors relating to flashbacks of September 11th, shortness of breath, hot flashes, loss of concentration, and repeated, uncontrollable feelings and thoughts as to why this series of events has occurred, how Plaintiff was treated at work, and the motivation behind committing the actions giving rise to this Complaint.

## ATTORNEY'S FEES

183.   Plaintiff is entitled to an award of attorney's fees and reimbursement of the costs and expenses incurred in relation to prosecuting this action pursuant to Title VII, 42 U.S.C. § 2000e-5(k) as well as other applicable statutory provisions under which this action is brought.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Honorable Court enter judgment in Plaintiff's favor, and award Plaintiff such relief as to make Plaintiff whole and remedy the aforesaid violations; and hold Defendants' jointly and severely liable and in doing so, award all legal and equitable relief provided by law, including but not limited to:

a. Temporary injunctive relief providing Plaintiff with a reasonable accommodation and otherwise non-hostile work environment;

b. Declaratory relief finding Defendants' actions are unconstitutional;

c. Temporary injunctive relief providing Plaintiff with a reasonable accommodation and otherwise non-hostile work environment;

d. Compensatory damages for the injuries sustained and the medical bills and costs incurred in an amount in excess of $1,000,000.00;

e. Punitive damages, but not against the District of Columbia, in an amount to be determined at trial;

f. An award of reasonable attorney's fees and litigation costs; and

g. Any such other relief this Honorable Court deems just and proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

Dated: December 12, 2022

Respectfully submitted,
DANIEL BARROZO

By: /s/ NICOLE C. PEARSON
Nicole C. Pearson (265350)
LAW OFFICE OF NICOLE C. PEARSON
3421 Via Oporto, Suite 201
Newport Beach, CA 92663
Tel: (424) 272-5526

PLAINTIFF'S COMPLAINT

nicole@fltjllp.com

By: /s/ MICHAEL A. YODER
    Michael A. Yoder* (VSB: 93863)
    LAW OFFICE OF MICHAEL A. YODER, PLLC
    2300 Wilson Blvd., Suite 700
    Arlington, VA 22201
    Tel: (571) 234-5594
    michael@yoderesq.com
    *Pro Hac Vice forthcoming

    *Counsel for Plaintiff Daniel Barrozo*

PLAINTIFF'S COMPLAINT

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**Los Angeles District Office**
255 East Temple St, 4th Floor
Los Angeles, CA 90012
(213) 785-3090
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS

### (This Notice replaces EEOC FORMS 161 & 161-A)

Issued On: 09/13/2022

**To:** Daniel R. Barrozo Sr.
      12435 Loraine Ave
      CHINO, CA 91710
Charge No: 480-2022-01985

EEOC Representative and email:      Joe HuangValeriano
                                    Federal Investigator
                                    joe.huang-valeriano@eeoc.gov

---

### DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission,

Digitally Signed By:Christine Park-Gonzalez
09/13/2022

Christine Park-Gonzalez
Acting District Director

**EXHIBIT**
**1**